UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

-----------------------------------------------------------------
In re

Performance Transportation Services, Inc., *et al*                Case No. 07-4746 K

                                    Debtor
-----------------------------------------------------------------
Mark S. Wallach, Esq., Chapter 7 Trustee of
Performance Transportation Services, Inc., et al.

                                    Plaintiff


                    -vs-                          AP No. 09-1190 K

Ford Motor Company


                                    Defendant
-----------------------------------------------------------------
Mark S. Wallach, Esq., Chapter 7 Trustee of
Performance Transportation Services, Inc., et al.

                                    Plaintiff

                    -vs-                          AP No. 09-1244 K

Ford Motor Company

                                    Defendant
-----------------------------------------------------------------



                    Janet G. Burhyte, Esq.
              Gross, Shuman, Brizdle & Gilfillan, P.C.
                    465 Main Street, Suite 600
                    Buffalo, NY   14203

                    Attorney for Plaintiff

                    Marc N. Swanson, Esq.
                    Ronald A. Spinner, Esq.
              Miller Canfield Paddock & Stone, PLC
              150 West Jefferson Avenue, Suite 2500
                    Detroit, MI 48226

Attorneys for Ford Motor Company

Kevin Tompsett, Esq.
Harris Beach PLLC
99 Garnsey Road
Pittsford, NY   14534

Attorney for Ford Motor Company


OPINION AND ORDER

DENYING MOTION FOR SUMMARY JUDGMENT

This is this writer's first experience with a witness who is an expert on the subject

of the "ordinary course" defense in a preference action.[1]  Although the question of whether a

transfer falls within the defense or not is an "ultimate question" for the Court, Rule 704, Federal

Rules of Evidence, permits expert opinion as to ultimate issues in civil cases.  "Ordinary course"

experts, including Mr. Schaeffer, have been permitted to testify in other bankruptcy courts.

The § 547(c)(2) defense is a mixed question of law and fact, but usually is more

heavily-based in fact than in law.  That is because the law has been fairly well established by the

cases.  It is against the backdrop of the case law that such experts express an opinion derived

---

[1] 11 U.S.C. § 547 (c)(2) provides: " to the extent that such transfer of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was - -

(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

(B) made according to ordinary business terms;"

from his or her analysis of voluminous transactions.  By way of analogy, a forensic accountant who has examined the books and records of a debtor may express an opinion as to whether and when that debtor became "insolvent" even though that question is an ultimate question in many contexts under the Bankruptcy Code.  Similarly, when the value of an asset is an ultimate question in deciding the extent to which "adequate protection" is required, or the extent to which there is or is not equity in the asset, or the size of a secured claim, etc., an expert appraiser may express an opinion about that ultimate question.

The nature of the "ordinary course" defense is such that a defendant may choose to defend under either or both of two prongs.  As to the objective prong in this case, the Court has no difficulty in ruling that Mr. Schaeffer's opinion is competent, informative, and useful to the Court,[2] as required under Rule 702 of the Federal Rules of Evidence.[3]  Just as an expert appraiser retained to determine the value of, for example, a very large mobile home park, may decide that the applicable capitalization rate should be the established and published capitalization rate for an apartment complex rather than an office complex, Mr. Schaeffer has selected a certain category of "self-insurers" to be the most comparable established and published category for use in analyzing this unusual industry.

Instead of responding in kind, the Trustee simply has objected to the admissibility of Mr. Schaeffer's declaration and report, and consequently insists that the Defendant's motion

---

[2]Such experts are as close to Special Masters as this Court is permitted to come.  (See Federal Rule of Bankruptcy Procedure 9031, but also see Rule 706, F.R. Ev. as to experts appointed by the Court.)

[3]As explained later, however, his opinion will not carry this day for Ford.

must be denied as a matter of law.[4]

That prompted an inquiry from the Court as to whether Rule 26, F.R.Civ.P. was obeyed by Ford.  Even that simple question birthed yet another dispute.  Now that the Court has examined the contents of the declaration and report, the Court concludes that it need not decide the Rule 26 dispute.

### Objective Prong

Although the Trustee has not responded "in kind," Rule 56(c)(2) F.R.Civ.P. requires that if the Court is to grant summary judgment, it must find that the moving party is "entitled to judgment as a matter of law." The Court does not so find.

That is because the Trustee has argued that the "relevant market"[5] for purposes of the objective prong is the arcane industry of new-car haulers and original equipment manufacturers (OEMs) and that Mr. Schaeffer did not explain why an analysis based on that market was either inappropriate or unavailable.  Some, if not all, major OEMs in the United States are publicly-traded corporations, and it is possible that the administration of their "damage claims programs" is available to the public.  At the very least, the Defendant's administration of its damage claims programs with haulers other than these Debtors would have been available to Mr. Schaeffer.

---

[4]Objection is not a "default" under motion practice in this Court.  In other words, the failure to answer with a competing expert or with thousands of exhibits does not mean that the Court is not required to determine the sufficiency of the Motion, as discussed below.

[5]*In re Roblin Industries, Inc.*, 78 F.3d 30, 40 (2nd Cir. 1996); *In re M.P. Industries, Inc.*, 2000 WL 766093, p.5 (4th Cir. 2000); *In re Gulf City Seafoods, Inc.*, 296 F.3d 363, 368 (5th Cir. 2002).

The Court agrees with the Trustee.  Consequently, it is not persuaded "as a matter of law" that Ford is entitled to summary judgment under the objective prong.

Subjective Prong

Mr. Schaeffer has been appropriately circumspect in his report as to this prong. He is clear that his opinion is based only on materials provided to him by Ford.  He is silent as to other materials that he might or might not have requested from Ford.  This is important because (as the Trustee points out) Mr. Schaeffer has published an article insisting that a proper "ordinary course" analysis requires "at least" <u>two</u> years of transactional history between a debtor and a defendant leading-up to the 90-day preference period.  He was given only <u>one</u> year of transactional history here (leading-up to the preference period).  Moreover, the Trustee complains that he has never seen the raw data that was provided by Ford to Mr. Schaeffer, and the data is not included in Mr. Schaeffer's report.

Two affidavits have been offered by Ford in support of its motion.  One from a Ms. Jeannie Gnotek and the other from a Mr. Leland Chang explaining how they, as employees of Ford, extracted the raw data that was to be provided to Mr. Schaeffer.  They attest that they used "search terms" that their employer, Ford, gave them to use.  The applicable database did not belong to Ford.  Rather, it belonged to a third-party contractor that managed the damage claims program for Ford.  In other words, this has become an "e-discovery" case, and this Court has not examined the Trustee's demands in order to determine whether those demands encompassed e-discovery.  (This Court is well-acquainted with U.S. District Court Judge Scheindlin's landmark

work in "e-discovery" in the *Zubulake* case.  One of at least five e-discovery decisions in that case

is *Zubulake v. USB Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003.)  (This case is actually one-

step removed from the typical e-discovery case because of the fact that the database in question is

that of a third-party contractor, not that of the Defendant or the Defendant's counsel.)

        The Court is also concerned, in this regard, about the fact that this is a Chapter 22.

The original Chapter 11 filings occurred on January 25, 2006, and the consolidated plan was

confirmed on December 21, 2006.  The present cases were filed on November 19, 2007.

Perhaps Ford held the Debtors here to tighter reins than it did as to other haulers after these

Debtors filed their first Chapter 11s.  If so, then that might present a pure question of <u>law</u> with

regard to the "ordinary course" defense, not a mixed question of law and fact.  (This Court is not

unfamiliar with applying "ordinary course" analysis to payments that are late under a workout

arrangement.  (E.g. *In re Voge, Inc.*, 217 B.R. 36, 32 Bankr. Ct. Dec. 305, (Bankr. W.D.N.Y.

1998), modified at 222 B.R. 204; *In re Al Cohen's Rye Bread Bakery, Inc.*, 202 B.R. 546 (Bankr.

W.D.N.Y. 1996).)

CONCLUSION

        The motion is denied without prejudice.  These two adversary proceedings are

restored to the Calendar Call on **<u>June 19, 2013 at 11:30 a.m.</u>** for further scheduling.

        SO ORDERED.

Dated:       Buffalo, New York
              April 12, 2013

                                              _____
                                                   U.S.B.J.